The case set for this afternoon is People v. Himadeus v. McNulty for 5-2306-43. Counsel for the appellant, you may proceed, and please state your name for the record. My name is Nathan Swanson and I am here on behalf of Timothy McNulty. Mr. McNulty was found guilty after a jury trial of two counts of predatory criminal sexual assault on a child and one count of criminal sexual assault. Appellant McNulty raised two points on appeal. Unless this court had any questions regarding the second point, which alleged error in the admission of an uncharged bad act, I will rest on the brief on that point and concentrate mainly on point one. That point argued that the trial court erred by excluding some evidence having to do with allegations made by the complaining witness and her sister. Specifically, that when the complaining witness and her sister went to law enforcement to make a statement regarding these allegations, they brought with them a letter. The two witnesses told the officer that that letter had been found in the complaining witness's pocket. This was several years after the alleged event. The letter was a love letter. It talked about an affair. Is that letter in the record? Your Honor, the text of the letter, the letter itself was not admitted into the record. The content of the letter, however, was discussed extensively both in pretrial motions and in pretrial hearings. The state brings up the fact that there is no offer of proof. What do you have to say about that? Your Honor, I would say that as part of the formal offer of proof, however, the issue here is whether or not the evidence was the information before the trial court was sufficient for them to make a proper analysis of what the evidence was, what the import of it was, and for this court to do the same. And between the pretrial motions, both the written motions and the arguments made before the trial court, I think there's more than enough here that was aware of basically the content of the letter, the evidence that would have been about its discovery, who claimed they had found it, who claimed that it was written in Mr. McNulty's handwriting, the arguments about what it would have been used for. I don't think there's any question, both before the trial court and here, we can make a full analysis of what the evidence would have been at trial and what was excluded. And I think that would be sufficient for this court to engage in or to review the issue. I need some clarification, counsel. Page 15 of your brief states that up until the eve of trial, the State appears poised to introduce the letter into evidence and to ascribe it to appellants. Where does it say that in the transcript or the record? Because I looked, and I don't see where the State says that they ever intended to use the letter. I think that's the implication from the motion that the defendant filed to allow admission of expert testimony regarding the handwriting. At that point, that seems to indicate that what both parties expected to go forward was that this evidence would be coming in. But that's a defense's motion you're referring to, correct? Correct, yes. I mean, the State never filed a motion regarding the letter or anything. That's true. Correct. I'm sorry. Again, we're getting into context here. The defendant's motion was he wanted to get a pre-trial ruling to allow admission of expert testimony that the letter was not written by the defendant. That was what the defense motion was about. Immediately after that being filed, that's when the true author of the letter came forward, and that's the way all that comes forward. And that's when the State can say, well, no, we're not bringing that up. It should come in. So, again, to get into the context here, when there's an extensive pre-trial litigation about getting the letter released so the expert can review it, it's all over the place in the record. So they disclosed it in discovery. But nowhere did they suggest that they were going to introduce it, but it's assumed that because it was disclosed that it was fair game. Correct. Is that your point? That would be my point, yes, Your Honor. Okay. And, again, because he was moving to bring in that expert, that indicates that he thought this was going to be an issue at trial, not just... No, I'm just trying to get at what the State was thinking. All right. Okay. So, to return to the point, the letter was a plaintiff love letter. It didn't say who it was to, and it didn't have a signature. At the time that the letter was given to law enforcement by the complaining witness, apparently both the complaining witness and her sister said they thought it was the defendant's handwriting. They said it was found in the complaining witness's coat. She's the only one who ever wore the coat. The letter was shown to an appellant's ex-wife, the complaining witness's mother. She said that is definitely the defendant's. It's his handwriting. It uses phrases that he's familiar with. The case goes on for several years. There's an extensive litigation about trying to get the letter released so an expert can review it. This goes back and forth. Eventually it's determined it's, in fact, not, the letter is not written by Mr. McNulty. A handwriting expert says it wasn't him, and the person who actually wrote the letter comes forward and says, no, I was the one who wrote it. The defense wanted to get that in to impeach the testimony of the complaining witness, her sister and her mother. I think the first issue here is whether or not that letter and their statements about it was collateral, and that's where this, again, this context is key. The complaining witness, her sister, they brought that letter with them as evidence of their allegations to law enforcement. It wasn't as if they were saying, oh, here's something they've said, you know, they said some other time, some other place, completely unrelated. Excuse me. Counsel, are you familiar with People Be Smart, a recent Supreme Court case, though, that talks about specific instances of impeachment? I'm not familiar with that particular case, Your Honor, but my understanding is generally specific instances when they're to a collateral matter, they're not admissible. This is not, you're suggesting that this isn't a collateral matter. Exactly, Your Honor. I'm saying this is not a collateral matter. And even if it was, I think there's some question there, but just on the subject of collateral, imagine other hypotheticals. If a complaining witness says the defendant had a tattoo, it was in this car. Well, and then the evidence comes out that he didn't have the tattoo at the time, or he didn't have the car at the time. That would not be collateral. That would go directly to the allegations they're making. Same token here. These witnesses brought this letter, this purported love letter, to law enforcement when they went to talk about these allegations as evidence of the allegations. They said, here, we found this love letter. We think it's from him to her. Look at it. This proves the allegations we're making. This corroborates what we're telling you. Turns out that letter wasn't him. So they brought it as corroboration. When it became clear that it was not corroborating, it became evidence that could be used to impeach them. It would not be collateral. It was part and parcel. It was involved in the allegations they were making. But to the point, if it were collateral, then the case law is that if it goes to their bias, then it could still be admissible. That's what the case law says. This would indicate a bias on their part because at that point, that would suggest It's admissible for impeachment. Yes, Your Honor. It's admissible for impeachment purposes. I'm sorry. Because it indicates their bias in the sense that they were so credulous, they were so desperate for something to corroborate their story, they brought in this letter that even the trial court said it's clearly anybody. This couldn't actually be a letter from him to her. That's what the trial court kind of hung its hat on. It said, look, no one would believe this was a love letter from a grown man to his pre-pubescent daughter. No one would believe that. Agreed. Except the defendant. The complainant says they wanted the police officers to believe just that. That goes to their bias. They were so prepared to do that. It indicates their bias in this matter. May I clarify something? Just on a basic evidentiary matter, on what would this be used to impeach the complaining witness? If I understand your question correctly, as to, it would be used in two ways. One would be to say, well, use, to essentially impeach her testimony regarding all the allegations. You said these things, but you also said, listen, this is not true. That's part of what you're saying. So therefore, that didn't happen. It would also be used to show, again, her bias. You're saying this about him, but didn't you also say that he wrote this letter? Well, he did write this letter. It indicates that you're willing to say anything about him. You're against him. It would go to, there was some testimony about why she might make up this story. This helps demonstrate that bias. One small clarification. In the brief, it seems to suggest that the complaining witness, teenage girl, I think is appropriate too, that she claimed that this was written by the defendant. When I read through this, it says that she said the handwriting looked similar to the defendant. Do you see any significance in that? In the distinction between the two, I think you have to have it in the context, because it was not just her who said that it looked similar to. It was also her sister. It was also her mother saying almost definitively that it was. So, again, it wasn't that they brought it up six months later or a year later. They brought it with them on that date. They brought it with them as evidence to give to law enforcement to corroborate them. So, however she may have initially phrased it, the context is clear that she thought that this was evidence of his conduct. Is the issue substantial enough, material enough, to be used as a basis for impeachment? I believe so, yes, Your Honor, because, again, just the context of where she brought it with her. She brought it with her to a police interview. When law enforcement initially contacted the declaring witness, she indicated that she did not wish to make a statement. About three weeks later, the testimony was a little bit vague on the exact time period, she calls the law enforcement officer and says, I am now ready to make a statement. And then the record also establishes that either that day, but she called law enforcement the day before is when she reportedly discovered this letter. I didn't mean to distract you from what you wanted to emphasize. Thank you. Counsel, your red light is on, but I'll let you wrap up, and then I'll give him some extra time to state. Your Honor, I've kind of reached the end of my spiel there. I appreciate it, but I would, again, ask that you, on this basis, vacate Mr. McAuliffe's convictions and remand for a new trial. Okay. Thank you. Thank you. You'll have an opportunity before we vote. Thank you. Appellee. Good afternoon, Your Honor. My name is Karen Jones with the State's Attorney's Appellate Prosecutor's Office. I'm here on behalf of the State Council. I want to first address the question that was asked by Justice Moore about the record. It is our position that the record, that it's the defendant's obligation to present a complete record, and they did not present a complete record in this case, which prevents this Court from considering an issue that they've argued. The information that is available in the record with regards to the discovery of this letter, the statements that were made by the individuals and about the letter, comes solely from written and oral arguments presented by defense counsel and the State and statements by the Court. The arguments aren't evidence. There's nothing reported in the topic of this letter anywhere in the record? You know, Your Honor, I looked, and I do cite page C-206 in my brief. I don't recall. I didn't look at it again to see whether that was actually the letter itself or whether just it was somebody reading the letter, so I honestly can't answer that question. But the bottom line is the information about what the witnesses testified to in a, I mean, most of the information about the discovery of this letter came from the depositions that were taken in the civil divorce proceeding or transcripts of written interviews or transcripts of interviews that were conducted. There's evidence, there's argument in this case about the fact that the defense attorney had a number of interviews, I guess recorded interviews, transcribed so that he could use them in impeachment and was using the transcript and asking the Court and the State to confirm that the transcript was consistent with what the video showed. But at no point did anybody and the Court relied upon those depositions, those transcripts, but the defendant never actually asked that those documents be made a part of this record. They're not in the record. So all we have as to what transpired is their arguments and written documents. And as I said, arguments made by counsel are not evidence, nor are they facts. And since it's the defendant's obligation to present a thorough record, a complete record, any doubt due to an insufficient record will be resolved against the appellant. What about this issue that the State was planning on introducing in the letter? There's absolutely no evidence of that, Your Honor. They did produce it and discover, but if they don't and it's discovered, they'd be subject to a grantee violation. And I understand that, but why hire a handwriting expert unless you're concerned that the State's going to introduce the letter? I mean, it does beg the question, right? Well, it does, but also that handwriting expert, and this is the other thing that's very interesting about their argument about this frame-up, is this exact same handwriting expert also looked and determined that neither the complaining witness, A.B., her sister, Cody, Jane McNulty, her mother, or her grandmother, Hollingsworth, wrote that letter either. And this other person, Walz, who was a neighbor, came forward and said, I think I wrote that letter. So for this frame-up, for this, there had to be some grand conspiracy between this complaining witness and this woman who has no, you know, has no skin in the game, so to speak, for her to collaborate or say, you know, oh, you know, yeah, it's my writing or, I mean, she had to be in on it if it was intended to be a frame-up. Not to throw you off anymore, I want to go back to one point about the letter. Does it change your argument or does it alter your opinion, I should say? In your judgment, I think the trial court quoted from the letter on the record. Is that not true? I don't think it was read into the record, but I think the trial court at least quoted some lines from that. Is that significant at all? Well, I mean, I think it just goes to part and parcel of my argument, again, that the only thing we have to go by is what people said the letter. The letter, and like I said, I honestly do not recall, but even if the letter is part of the record, the testimony about how it was discovered, who wrote it, we don't even have the expert, the written report from the expert as to what they concluded with regards to who wrote it, who didn't write it. There's nothing in this record that's factual, evidentiary, that supports any of the arguments that were made. You may have asked a question about whether this fact that it was a similar handwriting, where they testified or stated that it was similar to his handwriting, was relevant. And I think it is, because they're not handwriting experts. They're arguing that they made these false allegations that they are framing him because they're trying to paint him, this love letter, as something that they wrote. But, I mean, we often say that handwriting is similar. But is that really a false statement? I mean, you don't know conclusively whether they wrote it, because the only way you can know that is if you sat and watched them write it. So I don't know that we're even talking about a quote-unquote false statement. They're stating their beliefs, and they're not even handwriting experts. I also want to point out, and they did this in the opening brief, and they did this in the reply brief, they consistently argued that A.B. discovered the letter. She had no involvement with the discovery of this letter. There's no testimony in this. The page sites that they cite to in the record, the proposition that A.B., the victim of the sexual conduct on the part of her stepfather, had no involvement with discovering this letter. Her sister found it in the pocket of a coat when she was cleaning out the room that she shared with her sister, her grandmother's house. That's how it was discovered. Ms. Jones, can I ask you if People Be Smart, and I believe it was cited, I think, in actually Appellantsbury, but I believe it was the appellate court matter, but since then the Supreme Court's weighed in on People Be Smart. Is it relevant here? Does it apply to this case? Well, it does, Your Honor, because the whole point is you can't use specific act. I mean, specific act impeachment is prohibited in Illinois. That's the law. And that's why I say in my brief that there's a little bit of inconsistency or confusion in the defendants' brief is exactly what they're arguing. They assert that the—first they say that there are false allegations and that it goes with credibility, and basically they imply that the use of it would have been to show that they're lying on this occasion, so they must be lying about everything. But then there's also the argument that the letter goes to bias, that it showed some sort of bias, to the extent that they're trying to argue that this letter somehow shows that false statements could have been used to show that they're liars now, they were liars then, and they're always going to be liars. That is not allowed. That is specific act impeachment, and it is prohibited in Illinois. And the courts have held that. And I recite People v. Santos for that proposition, which is also a Supreme Court case. Does the Supreme Court Pooch case apply wherein the burden is on the felon to produce a complete record? I'm sorry, Your Honor. Does the Supreme Court Pooch case apply wherein it places the burden on the felon to produce a complete record? Well, I think it does, Your Honor, and that's my first argument, is the fact that because all we have here are arguments of counsel and not evidentiary facts, there's nothing in this record that this Court can look to to confirm whether what everyone says those depositions state. Actually, they state that. I mean, you know, depositions are pretty amorphous. I mean, they get into a lot of different issues. And you can pick a phrase or pick a word out of, or an answer out of a deposition, but that might not tell the whole story because there are questions that lead up to that one. There are questions that are after that. So just because they say, well, they said X, Y, or Z, that doesn't mean, okay, yeah, but they might have said something a little different. This Court can't look at that record, can't look at that deposition to see, well, is the way in which the courts and everyone argued this, is it actually consistent with what that deposition said? Is there something more that we need to know about that deposition? I wanted to just touch briefly on the bias issue. And, of course, the Constitution allows for, the Sixth Amendment right allows for a person to question somebody about bias. But for bias, you have to, there has to be, it can't confuse the issues. You have to be able to, it must relate to a proper or material subject matter. It must be timely, unequivocal, and directly related, and may not be remote or uncertain. And it must give rise to the inference that the witness has something to gain or lose by this testimony. I'm going to talk about that third problem just real briefly because I don't have much time. There's nothing, the defendant doesn't explain how A, B, or Cody would personally gain or lose anything from fabricating this letter. And Cody, and if she really wanted to frame him or she wanted to set him up, she could have come forward in 2013 when her parents, when her stepfather and her mother separated. But she didn't. This didn't come to light until 2016. And she didn't even report it to the police. She went to a counselor at her school. And because that counselor was a mandated reporter, that counselor called the police, who then called A, B, who said, I don't really want to do anything with this. And it was 20 days later. So, I mean, the evidence in this case, and I'll stay on the rest of my brief with the arguments with regards to the rest of the bias argument. But we'd ask that this court affirm the conviction and the court's determination that the letter was not properly used in impeachment. Any questions? I want to say that we took up part of your time. If you want to wrap up, please do. I have, I think my brief adequately addresses all the issues. Thank you. Excuse me a second, please. Thank you. Very briefly, ask people to be smart. Your Honor, it was cited in the brief, but it was cited for a different principle in the second point as opposed to this particular issue. With regards to whether or not the letter appears in the record, I'd point two things out. One, it's not just the letter. It's also the testimony that would have been elicited regarding the discovery of the letter and what the witnesses told law enforcement about it. Can you clarify the position that it wasn't the complaining witness who necessarily discovered or turned in the letter? Because that point was raised several times in the second brief, right? And I believe the stage director was some statements that the defense, I'm sorry, the victim's sister found the letter in the jacket that only the victim wears, and that they came together to law enforcement and brought the letter with them. So as to which person found the letter in the coat, I'll concede that the record assumes it was the sister, but since they both brought it and both made those statements contemporaneously to law enforcement, I'm not sure that makes a huge difference. I'm trying to connect the dots here, right? Because, you know, the point is that this is not a specific act of impeachment. This is related to the issue at hand, and I'm trying to connect all those dots. And I think Ms. Jones mentioned the bias issue, that if it's going to bias. Can you help me connect those dots? So some of those actually should probably remain unconnected. If it's not collateral, then whether or not it also would be to serve bias is a separate analysis. If it's collateral, then it's only admissible to prove the witness's bias. If it's not collateral, if it's part and parcel of the entire allegation, then it's not specific act of impeachment. It's just refuting the evidence of the witness. With regards to the bias issue, so if you were to agree that it was collateral, which I do have a substantial problem with because it's not as if these witnesses said, oh, hey, we happen to have this letter written by Mr. McNulty. Here you go. And it turned out it wasn't written. We happen to have this love letter we discovered from him. Like, here, this is part of what we're saying. So I don't think that makes it clear. I think that's distinct. But if you're talking about just bias, the state did this in the brief. They said there's no reason they would have any reason to make these allegations up. Well, there was testimony, and this was part of the defense at trial, that these allegations were manufactured because the complaining witness wanted her mother to get full custody of their half-sister. That was the defense at trial. So that gives her something to get from it. It's not just a financial benefit. That's not the only kind of benefit somebody can get. It's also just wanting the person to be convicted. That is a bias. If the witness wants the defendant to be convicted, they are biased against the witness. If they get some benefit out of it, whatever they might believe that to be. But isn't it a collateral issue? Okay, she made up these allegations. She's making up the letter. Isn't that collateral? And is it then biased, to show bias? And the reason I would say it's not collateral is this is why I use that example of if she said he had a tattoo or if she said he had a car. Okay, he was driving. He showed up in his 2022 Camaro. Well, he didn't have a 2022 Camaro. That's not collateral. That's part of what she said happened at the event. Same token here. Hey, he did this to me. Here's this thing. I think it was a love letter he wrote. I found it in my coat. She brought that evidence, believing it was part of a corroborated testimony that she gave, not just collaterally, but like here, it's part of it. This is what I'm giving to law enforcement to prove that what I am saying is true. And that's what makes it not collateral. You can direct your comments to whatever issue you think, but we really haven't heard you expound much on the point you made earlier, which is the second claim in this appeal. Anything you want to say on that? Will you have time remaining? The only thing I would say that, Your Honor, is that the trial court admitted that, initially admitted the evidence for two reasons, eventually limited that just to the purpose of intent, and I think the case law is clear that when it's a general denial, intent is not an issue such that it would allow the admission of other bad acts. But that's the only point I would make as to that. And then as a final point with regards to point one, People V. Way is a – I'll let the Supreme Court decide on the reply to it. Make sure I tell you the correct one. People V. Way, 2017 IL-120023. It's a Supreme Court case that said that – the crucial point is there is sufficient offer of proof. That can be done informally. It can be done through counsel's representations. So when the state says, oh, the arguments of counsel is not evidence, that's true. You can't say to a jury that the counsel made this argument as evidence. But in terms of appellate review, is there sufficient offer of proof, even if it was done informally, such that the trial court and the appellate court can review the issue. They know enough about it. I think that's the case here. The state hasn't pointed to anything besides what else might have been in the deposition that is lacking that would prevent your review. But that would have been a trial. That's when that evidence would have come up. There was no question before the trial court – and I'm sorry if I run over briefly just to finish this up. There was no question before the trial court that anything that anyone had asserted in the written or oral arguments was incomplete or inaccurate. The record is sufficient for appellate review. That was sufficient offer of proof. Any questions? No, thank you. Thank you, counsel. Thank you, Your Honor. I appreciate your arguments. The court will take this matter under advisement, which includes disposition in due course. And this is the last case for today, the last case for our October arguments. I believe our next arguments will be in December. So we'll now be in adjournment until December of that time.